FILED
02/28/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 21, 2025 Session

## GEORGE W. COSEY v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
No. 2017-C-1647       Angelita Blackshear Dalton, Judge
_____

### No. M2024-00561-CCA-R3-PC
_____

Petitioner, George W. Cosey, pleaded nolo contendere to Class E felony theft and received an agreed one-year sentence. Petitioner subsequently filed a petition for post-conviction relief, which the Davidson County Criminal Court denied after a hearing. On appeal, Petitioner argues that he received the ineffective assistance of counsel because counsel did not inform him that, between the time of the offense and Petitioner's plea, the theft grading statute had been amended. After a thorough review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Susan L. Kay, Vanderbilt Legal Clinic; Madeline Strasser and Tyler Hall (at oral argument), and Falynn D. Dunkelberger (in second amended petition) (Specially admitted to practice pursuant to Supreme Court Rule 7 § 10.03); and Lindsay Baumgardner Smith (in first amended petition), Nashville, Tennessee, for the appellant, George W. Cosey.

Jonathan Skrmetti, Attorney General and Reporter; Joseph Fiorile, Honors Fellow; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### <u>Factual and Procedural Background</u>

This case arises from a July 21, 2016 vehicle theft. The July 2017 term of the Davidson County Grand Jury issued an indictment charging Petitioner with theft of

property valued at $1,000 or more but less than $10,000, a Class D felony. *See* Tenn. Code Ann. § 39-14-105(3) (2016).

The Public Safety Act of 2016, which became effective on January 1, 2017, amended Tennessee Code Annotated section 39-14-105 to provide a new range of property values for Class A misdemeanor, Class E felony, and Class D felony theft. Thus, after January 1, 2017, Tennessee Code Annotated section 39-14-105(a)(1)-(3) provides:

(a) Theft of property or services is:

(1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;

(2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);

(3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000)[.][1]

Tenn. Code Ann. § 39-14-105(a)(1)-(3) (2017).

*The Criminal Savings Statute*

Tennessee Code Annotated section § 39-11-112, commonly referred to as the criminal savings statute, provides:

When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be *prosecuted under the act or statute in effect at the time of the commission of the offense.* Except as provided under § 40-35-117, *in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.*

Tenn. Code Ann. § 39-11-112 (emphasis added).

---

[1] Tennessee Code Annotated section 39-14-105(a) grades both theft of property and theft of services. Because this case only involves theft of property, we will omit "services" in our discussion of the grading of theft statute.

a. Plea Proceedings

At the April 29, 2019 plea submission hearing, Petitioner affirmed that he understood his rights to a jury trial, to present evidence, to cross-examine witnesses, to the assistance of counsel, and to remain silent or testify. He further affirmed that he understood that, by entering a plea, he was giving up those rights. The trial court stated that, at the time of the offense, theft of more than $1,000 but less than $10,000 was a Class D felony. The prosecutor stated that Petitioner was a Range I offender; the trial court told Petitioner that the sentencing range he faced if convicted at trial was two to four years. Petitioner indicated that he understood.

Petitioner affirmed that he had reviewed the plea petition with trial counsel, that he had understood it, and that trial counsel had answered any questions he had. Petitioner asked the trial court if he could plead no contest, and after the prosecutor said that she had no objection, the trial court answered Petitioner affirmatively. Petitioner stated that he had signed the plea petition.

The prosecutor stated that Petitioner was pleading no contest "to the E felony, theft of property over $500 which is a lesser included offense" with an agreed one-year sentence. Petitioner affirmed that this was his understanding of the plea agreement. Petitioner indicated to the trial court that he had another question, and trial counsel stated that she was checking into a question Petitioner had about his jail credit. The trial court assured Petitioner that he would receive the jail credit to which he was entitled.

The trial court again asked Petitioner if he was waiving his rights to a trial and to confront witnesses, and Petitioner answered affirmatively.

The prosecutor gave the following factual basis for the plea:

> Your Honor, had this case gone to trial the State's proof would have shown that on January 10, 2017[,] Officer Joshua Lippert observed [Petitioner] driving in an erratic manner, switching lanes suddenly, failing to signal when he changed lanes. Prior to initiating a traffic stop he ran the tags on the vehicle and showed that the vehicle had been stolen from Davidson County in July 2016. He confirmed that the vehicle was stolen through dispatch.
>
> He initiated a traffic stop on the vehicle, made contact with [Petitioner] who was the sole occupant of the vehicle. At that point [Petitioner] had an outstanding warrant for his arrest which Officer Lippert served on him. The estimated value of the stolen vehicle was $3,700. The victim in the case, who has been contacted and who has approved this plea

agreement, had parked her car on July 21, 2016[,] at RiverChase Apartments around [7:00] p.m. Her keys were in her house and only her sister and [Petitioner] had access to those keys. [Petitioner] had moved in with the victim on 7-22 of 2016 and he and the car were gone when she reported it stolen. All of this happened here in Nashville, Davidson County and based on those facts the State recommends the previously announced disposition.

When the trial court asked whether he believed that the prosecutor's statement "would establish a factual basis for [him] to enter this no contest plea," Petitioner responded, "Yes, ma'am." Upon examination by the trial court, trial counsel affirmed that she believed Petitioner was competent to enter his plea. Petitioner averred that he had no further questions, that he wished to give up his right to a trial and plead no contest, and that he was doing so knowingly and voluntarily. The trial court accepted the no contest plea.

b. Post-Conviction Proceedings

On August 16, 2019, Petitioner filed a timely pro se petition for post-conviction relief, asserting that he received ineffective assistance of counsel and entered an involuntary and unknowing plea. Petitioner stated that his felony sentence was illegal, citing the criminal savings statute. He argued that, at the time of his plea, theft of property over $500 but less than $1,000 was a misdemeanor and that "the value of the stolen property was less than [$1,000]. This statutory authority was not communicated by [trial counsel]." Post-conviction counsel twice amended the petition, adding that trial counsel "failed to inform [Petitioner] that his guilty plea would result in an illegal sentence." Petitioner noted that, if the State was willing to stipulate that the value of the car was less than $1,000, Petitioner should have been permitted to plead no contest to misdemeanor theft.

At the February 20, 2024 post-conviction hearing,[2] when asked whether he knew that "theft under $1,000 . . . had been reduced to a misdemeanor" at the time he pleaded no contest, Petitioner responded negatively. When asked whether he would have pleaded no contest to felony "theft over $500 and less than $1,000" if he had known that theft under $1,000 was a misdemeanor, Petitioner responded negatively.

On cross-examination, Petitioner testified that he did not remember the offense with which he was originally charged; whether the vehicle at issue was worth more than $1,000; that the vehicle's value was $3,700; or whether he pleaded no contest to a lesser offense. Petitioner said that he "would assume" that he received the discovery materials in his case

---

[2] The parties and the post-conviction court noted that part of the delay in this case occurred as a result of the COVID-19 pandemic.

- 4 -

and discussed them with trial counsel. Petitioner testified that he was "fighting the case" and that he "was the one pushing for trial." The following exchange occurred:

Q. But you eventually did not. You pled guilty because the State reduced the charges, and then you pled guilty to a lesser crime; right?

A. So you're asking me, is that -- was that the reason why I pled guilty?

Q. I'm just asking you, you acknowledge that that's what happened in this case, right? We were set for trial --

A. I assume so.

Q. We were set for trial. You were charged with one crime.

A. Okay.

Q. And then you pled guilty to a lesser crime, and that was a benefit to you, right?

A. I can't say for sure if I remember the chronology of how that all went, but I -- all I know is I wanted to go to court. I wanted to take it to court. That's how I remember it.

Q. But then you elected not to, obviously.

A. Yes, ma'am. I pled no contest. Yes, ma'am.

The State called trial counsel as a witness. Trial counsel testified that she had been a public defender for ten years and that she had been appointed to Petitioner's case. She stated that Petitioner was charged with Class D felony theft, that the case was set for trial, and that the State made offers of two and two and a half years,[3] respectively, which were both "within the [C]lass D felony range." Trial counsel stated that she obtained permission from Petitioner to make a counteroffer to the State for a one-year agreed sentence for Class E felony theft. Trial counsel stated that she had pretrial meetings with Petitioner and that they discussed the State's evidence, including that the value of the vehicle "was very specifically within the range where [counsel] believed a jury could return a guilty verdict on the [C]lass D felony." Trial counsel agreed that the State's accepting the one-year offer

---

[3] It is not apparent from trial counsel's testimony whether the initial plea offers involved Petitioner's pleading to Class D or Class E felony theft.

- 5 -

"inure[d] to [Petitioner's] benefit[.]" Trial counsel noted that the plea was entered on the morning of trial and that Petitioner was in custody at that time.

Trial counsel testified that that she was aware of the 2017 change in the theft grading statute. She noted that "the only gradation of theft that changed was that lowest [C]lass E felony" and that the lower threshold for Class E felonies moved from $500 to $1,000. Trial counsel agreed that, based upon the value of the vehicle, the theft in Petitioner's case was a Class D felony under both the old and new theft grading statutes. Trial counsel stated that, at the preliminary hearing, the victim testified that the vehicle was worth $3,700, that a police officer could also have testified as to the vehicle's value, and that the vehicle's value was included in the discovery materials.

Trial counsel testified that she was "confident" that she informed Petitioner of his Class D felony exposure at trial. She added,

> So when we discussed his counteroffer of one year to serve on the lesser, that was less than he would have gotten if convicted on the [C]lass D felony. There was also the consideration of whether he was a [Range I] or a [Range II] offender, which would have increased his risk and exposure if convicted on the [C]lass D felony at trial.

On cross-examination, trial counsel testified that she was aware of the criminal savings statute's provisions at the time of Petitioner's plea. Trial counsel stated,

> However, I don't think [Petitioner]'s exposure for what he was charged with could have been an A misdemeanor or an E felony. I mean, when we had the plea negotiations and were trying to reduce the charge, I mean, I was aware that [Petitioner] wanted to have a trial.
>
> I even took an offer to the State at his permission to dismiss the charge. I was aware that [Petitioner] wanted to reduce, get dismissed. You know, he told us today he wanted to fight the charge. I was aware of that.
>
> . . . .
>
> Specifically, though, [Petitioner] was not charged with an A misdemeanor crime under the new statute, so he would not have benefited from the gradation changing.

Trial counsel agreed that "the plea that [Petitioner] entered was to an E felony of theft over $500[.]" She stated that she was aware that, at the time of the plea, theft of property valued at between $500 and $1,000 was a misdemeanor.

The post-conviction court entered a written order denying relief. The post-conviction court found that Petitioner "ultimately entered his no contest plea to the abrogated offense of theft over $500 as a Range I offender." The court also found that Petitioner had fully served 30% of his one-year sentence, or 109.6 days, at the time of his plea, noting that the judgment form reflected that Petitioner had the following jail credit: January 10-23, 2017; August 4-November 30, 2017, and February 7, 2019 "to a date that was to be later determined."[4]

The post-conviction court found that the victim had testified at the preliminary hearing that the vehicle was worth $3,700. The court noted trial counsel's testimony that, although she was unable to say whether she specifically told Petitioner that theft under $500 was now a Class A misdemeanor, he was "aware that his exposure had he proceeded to trial would have been to the higher, Class D felony offense." The post-conviction court found that Petitioner "did acknowledge and acquiesce during the plea to the State's version of facts" that the vehicle was stolen and that police found Petitioner driving it. The post-conviction court found that trial counsel was not deficient and that Petitioner had not demonstrated prejudice.

Relative to the knowing and voluntary nature of the plea, the post-conviction court found that "no indication" existed that the State would have extended a misdemeanor plea offer in light of the victim's testimony that the vehicle was worth $3,700. The post-conviction court further found that Petitioner faced a Class D felony charge at trial, that trial counsel testified to a "significant" likelihood of conviction, and that a question existed as to Petitioner's offender classification. The post-conviction court noted that the Class D felony sentencing range was two to four years for a Range I offender and four to eight years for a Range II offender. The post-conviction court found that Petitioner had benefitted from the plea agreement and that he had served his sentence at the time he filed the pro se petition.[5]

Petitioner timely appealed.

## Analysis

On appeal, Petitioner asserts that he received ineffective assistance of counsel because trial counsel failed to inform him of the "material change" in the theft grading

---

[4] By this court's calculation, Petitioner had 134 days of jail credit, not including any days served after February 7, 2019.

[5] The post-conviction court also discussed that Tennessee Rule of Criminal Procedure 36.1 could not be used to correct an illegal sentence that has expired. The post-conviction petition, as amended, alleged that Petitioner was allowed to enter a plea resulting in an illegal sentence but did not specifically reference Rule 36.1. At oral argument, Petitioner clarified that he did not intend for his post-conviction petition to be taken as a motion to correct an illegal sentence pursuant to Rule 36.1.

statute, which Petitioner argues "meant that [Petitioner] was facing a lesser sentence than he would have faced prior to the effective date" of the amended theft grading statute. He argues generally that this error rendered his plea unknowing and involuntary.

The State responds that defense counsel's representation was not deficient because the state of the law regarding the application of the lesser penalty provision of the criminal savings statute to the theft grading statute was unsettled at the time of Petitioner's plea, that Petitioner had not established prejudice, and that he entered a knowing and voluntary plea.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

## I. Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Henley*, 960

S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dorsey v. State*, No. W2021-01135-CCA-R3-PC, 2022 WL 2840738, at *4 (Tenn. Crim. App. July 21, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In this case, we agree with the post-conviction court that Petitioner has not carried the burden of proving that trial counsel's performance was deficient or that he was prejudiced by counsel's alleged deficiency. Petitioner's main contention regarding deficiency is that trial counsel did not "prevent her client from entering a plea to [an] illegal sentence" because his one-year sentence for theft over $500 but less than $1,000 was "in direct contravention of the express provisions" of the amended theft grading statute. *See State v. Wooden*, 478 S.W.3d 585, 590 (Tenn. 2015). He also discusses case law in which attorneys failed to advise a defendant about lifetime community supervision requirements or adequately research whether a defendant was eligible for alternative sentencing before the respective defendants entered guilty pleas. *See Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011); *Grindstaff v. State*, 297 S.W.3d 208, 211 (Tenn. 2009).

- 9 -

Relative to trial counsel's preparation, she testified that she was aware of the amended theft grading statute, but that she did not believe it affected Petitioner's case because his underlying conduct constituted Class D felony theft under either version of the statute. Trial counsel noted that the vehicle's stated value of $3,700 was based upon the victim's preliminary hearing testimony and was also documented in the discovery materials. Because trial counsel stayed abreast of changes in the law and considered whether her client's case was impacted by the change, trial counsel was not deficient in her preparation for Petitioner's case.

Relative to Petitioner's assertion that trial counsel allowed Petitioner to enter into a plea agreement involving an illegal sentence, as the State notes, conflicting authority existed at the time of Petitioner's April 2019 plea regarding whether the lesser penalty provision of the criminal savings statute applied to the theft grading statute. *See State v. Menke*, 590 S.W.3d 455, 466-68 (Tenn. 2019) (summarizing several conflicting cases). In November 2019, our supreme court resolved the conflict in favor of applying the criminal savings statute to the amended theft grading statute. *Id.* at 470. For purposes of ineffective assistance claims, defense attorneys are not required to anticipate future changes in the law when the state of the law is unclear. *See generally Carpenter v. State*, 126 S.W.3d 879, 890-91 (Tenn. 2004) (concluding that trial counsel's performance was not deficient when "the law was less than clear regarding when lesser-included offense instructions must be given"); *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *State v. Mobley*, 397 S.W.3d 70, 80 (Tenn. 2013)) (discussing that reviewing courts must not assess an attorney's performance using "20-20 hindsight"). With Petitioner's permission, trial counsel negotiated a plea to a lesser offense with a bottom-of-range agreed sentence in spite of overwhelming evidence. Trial counsel's performance was not deficient.

Moreover, we find no support in the record for Petitioner's assertion that, had he known that the threshold for misdemeanor theft had been raised to $1,000, he would have decided to proceed to trial, where he would certainly have been convicted as charged of Class D felony theft. Petitioner has cited *Calvert*, 342 S.W.3d 477, for the proposition that prejudice can be established solely by a petitioner's post-conviction testimony that he would not have pleaded guilty but for trial counsel's deficient performance. In *Calvert*, the petitioner pleaded guilty to several sexual offenses involving minors in exchange for an effective ten-year sentence, with all but nine months suspended to probation. *Id.* at 480. The plea hearing involved a last-minute agreement for the petitioner to plead guilty to two counts of rape rather than aggravated sexual battery after the trial court realized that probation was not permitted for aggravated sexual battery convictions. *Id.* However, neither the petitioner's trial counsel nor the trial court informed the petitioner that the two rape convictions carried mandatory lifetime community supervision. *Id.*

At the post-conviction hearing in *Calvert*, the petitioner testified about the circumstances of his guilty plea and stated that knowing about the lifetime community

supervision requirement would have made a difference in his decision to plead guilty. *Id.* at 481-83. Our supreme court noted that the petitioner also "testified that he began contacting attorneys about undoing his guilty pleas as soon as he was released on probation." Our supreme court concluded that trial counsel's failure to advise the petitioner of "an additional part of a defendant's sentence . . . [that was] an undesirable and punitive consequence" of the guilty plea was deficient. *Id.* at 487 (quoting *Ward v. State*, 315 S.W.3d 461, 474-75 (Tenn. 2010)).

Relative to prejudice, our supreme court noted that the post-conviction court had erroneously found that lead counsel believed that the petitioner was motivated to plead guilty by a desire to have a shorter sentence, which was not an accurate statement of the testimony. *Id.* at 491. Our supreme court discussed that the post-conviction court had also failed to acknowledge the petitioner's testimony. *Id.* Our supreme court concluded that, based upon the petitioner's "uncontradicted testimony, . . . [he] has carried his burden of demonstrating prejudice resulting from counsel's deficient performance. That is, [the petitioner] has established a reasonable probability that, had counsel informed him about the mandatory lifetime community supervision sentence that would follow after his probation, he would not have pled guilty." *Id.*

We disagree that the *Calvert* court based its finding of prejudice *solely* upon the petitioner's statement—it considered the chaotic context of the plea hearing, the plea agreement's provisions, and the post-conviction court's erroneous findings, as well as the post-conviction testimony as a whole. Nevertheless, Petitioner's case is distinct from *Calvert*. First, Petitioner has not established that trial counsel's performance was deficient, unlike the clear lapse in *Calvert*. No consequence of Petitioner's plea, direct or collateral, was a surprise—he bargained for and received a Class E felony conviction and one-year sentence. Moreover, the post-conviction court in this case considered and implicitly rejected Petitioner's testimony that he would not have pleaded guilty had he known that theft over $500 but less than $1,000 was now a Class A misdemeanor.

This court has recently stated that a "petitioner's testimony that he or she subjectively would have rejected a plea and insisted on a trial will rarely establish prejudice by itself, particularly if objective evidence is to the contrary." *Centers v. State*, No. E2023-01716-CCA-R3-PC, 2024 WL 3756157, at *4 (Tenn. Crim. App. Aug. 12, 2024), *no perm. app. filed*. Here, all of the objective evidence is to the contrary. Petitioner was charged with Class D felony theft, and the State's evidence was overwhelming—Petitioner was one of two people other than the victim who had access to the stolen vehicle, and Petitioner was discovered driving it. The victim had testified under oath to the vehicle's value at the preliminary hearing, and a police officer could also have testified to its value. No evidence was presented to suggest that the vehicle's value was in dispute or that the State would have agreed to a misdemeanor plea. Trial counsel testified that the State made two offers that were in range for a Class D felony conviction and that she obtained Petitioner's

permission to extend a counteroffer of Class E felony theft over $500 with a one-year agreed sentence as a Range I offender. The applicability of the criminal savings statute to theft grading was in flux at the time of the plea hearing. In short, Petitioner has not proven by clear and convincing evidence that, had he known that he could potentially benefit[6] from misdemeanor sentencing if he was convicted—by open plea or at trial—of theft of property between $500 and $1,000, he would have proceeded to trial knowing that he would certainly be convicted of the indicted offense. Petitioner was not prejudiced, and he is not entitled to relief on this basis.

## II.     Knowing and Voluntary Plea

When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012), *no perm. app. filed*. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea[.]" *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats[.]" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges

---

[6] We note that Petitioner was sentenced as a Range I offender and eligible for release after 109.5 days, which he had already exceeded in jail credit; if Petitioner had been sentenced to eleven months, twenty-nine days for a Class A misdemeanor in 2019, the trial court could have ordered him to serve up to 75% of that period, or 254.8 days, before becoming eligible for release. *See* Tenn. Code Ann. § 40-35-302(d) (Supp. 2019).

against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id.* at 74. A reviewing court must examine the totality of the circumstances to determine if a guilty plea was knowing and voluntary. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In this case, the record supports the post-conviction court's determination that Petitioner knowingly and voluntarily pleaded guilty, and he has not overcome the presumption of truth attendant to his statements under oath and the trial court's findings at the plea hearing. *Id.* at 73-74. The plea hearing transcript reflects that Petitioner was fully informed about the terms of his guilty plea and the potential sentence, and he had the opportunity to ask questions before entering his plea. Petitioner independently asked to plead no contest and inquired about his jail credit, demonstrating an ability and willingness to engage with the trial court if he had a question. The trial court reviewed Petitioner's rights with him and the sentencing range, and Petitioner stated under oath that he understood his rights, that he had no questions for trial counsel or the trial court, and that he wished to plead no contest.

Petitioner's sparse post-conviction testimony did not include why he changed his mind about proceeding to trial and contained no information about the plea hearing or negotiations; in this regard, Petitioner has provided only "conclusory allegations unsupported by specifics." *Blackledge*, 431 U.S. at 74. The record is silent as to Petitioner's prior experience with the criminal justice system, although trial counsel indicated that a question existed as to his offender classification. Trial counsel testified that she met with Petitioner multiple times before the plea hearing and spoke to Petitioner about the charge and potential sentence he faced. In short, Petitioner has not overcome the "formidable barrier" of the statements he made under oath at the plea hearing. *Id.* Petitioner's plea was knowingly and voluntarily entered, and he is not entitled to relief on this basis.

- 13 -

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_s/ Robert L. Holloway, Jr._
ROBERT L. HOLLOWAY, JR., JUDGE